UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

HOWARD A. ALLEN, JR.           )
                                   )
                  Petitioner,     )
vs.                       )     1:01-cv-1658-JDT-TAB
                                   )
ED BUSS, Superintendent,     )
                                   )
                  Respondent.[1]  )

**Entry Discussing Petition for Writ of Habeas Corpus**

Petitioner Howard Allen was convicted in an Indiana state court of murder,
robbery and felony-murder. For these crimes, Allen was sentenced to death on August
30, 1988. He now seeks a writ of habeas corpus.

For the reasons explained in this Entry, Allen's petition must be denied.

**I.**

Allen was charged in Marion County with the July 14, 1987, murder, robbery and
felony-murder of Ernestine Griffin. The State of Indiana sought the death penalty. The
aggravating circumstance alleged by the State in seeking the death penalty was that
Allen had committed "an intentional murder in the commission of a robbery." *See* Ind.
Code § 35-50-2-9(b)(1).

---

[1]  The petitioner's current custodian, named in his official capacity only, is **substituted** as the
**respondent**.

In 1988, a jury convicted Allen of the crimes charged. On June 13, 1988, at the penalty phase, the jury returned a recommendation of death. On August 30, 1988, Allen was sentenced to death.

Allen's convictions and sentence were affirmed on direct appeal in *Allen v. State,* 686 N.E.2d 760 (Ind. 1997) (*Allen I*). The Indiana Supreme Court then affirmed the trial court's denial of post-conviction relief in *Allen v. State,* 749 N.E.2d 1158 (Ind. 2001) (*Allen II*), *cert. denied*, 122 S. Ct. 1925 (2002).

The evidence at trial favorable to the jury's verdict showed the following:

> Allen murdered 74-year-old Ernestine Griffin in her Indianapolis home. Police determined that Griffin had been killed by a combination of a knife wound to her chest and a blow to her head. On a kitchen counter, police found a piece of paper with Allen's name and phone number on it. A neighbor of Griffin's informed police that Allen had inquired with Griffin about a car that the neighbor had for sale. Police later discovered Griffin's camera at the carwash where Allen worked. After extensive questioning, Allen admitted to the police that he had struck Griffin, but denied killing her.

*Allen II*, 749 N.E.2d at 1163.

## II.

### A.

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). *See Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004). Review of

Allen's habeas action is governed by the provisions of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride*, 365 F.3d 557, 561 (7th Cir.

2004). Under the AEDPA, if a state court adjudicated a constitutional claim on the

merits, a federal court may grant habeas relief only if the state court decision was

contrary to, or involved an unreasonable application of, Supreme Court precedent, or if

the state court decision was based on an unreasonable determination of the facts in

light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d)(1), (2);

*Early v. Packer*, 537 U.S. 3, 7-8 (2003); *Lambert*, 365 F.3d at 561.

> A state-court decision is contrary to this Court's clearly established
> precedents if it applies a rule that contradicts the governing law set forth in
> our cases, or if it confronts a set of facts that is materially indistinguishable
> from a decision of this Court but reaches a different result. A state-court
> decision involves an unreasonable application of this Court's clearly
> established precedents if the state court applies this Court's precedents to
> the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). The Seventh

Circuit has explained that the "unreasonable application" prong of § 2254(d)(2) "is a

difficult standard to meet," meaning

> "something like lying well outside the boundaries of permissible
> differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir.
> 2002). We have held that under this criterion, habeas relief should not be
> granted if the state court decision can be said to be one of several equally-
> plausible outcomes. *Boss v. Pierce,* 263 F.3d 734, 742 (7th Cir. 2001).

*Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).  "The habeas applicant has the

burden of proof to show that the application of federal law was unreasonable." *Harding*

3

*v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)). This is a "rigorous burden of proof." *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999). *See also Green v. White*, 232 F.3d 671, 672 n.3 (9th Cir. 2000) (although "the relationship between § 2254(d)(2) and § 2254(e)(1) is not entirely clear . . . the standard of review appears to be clear error under both statutory provisions.").

## B.

In addition to the substantive standard set out above,"habeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting) (internal citations omitted). "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene*, 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). The purpose of the rules of procedural default is to "afford[ ] to the state courts an opportunity to correct a constitutional violation." *Duckworth v. Serrano*, 454 U.S. 1, 4 (1981).

Procedural default occurs either: (1) when a petitioner failed to exhaust state remedies and the court to which he would have been permitted to present his claims

4

would now find such claims procedurally barred, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1990); or (2) "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729.

Thus, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). If a prisoner commits procedural default with respect to his claim in habeas,

> he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986) (additional internal citations omitted)).

"Cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).

**III.**

Allen's claims are the following:

5

1.      The selection of a juror who intentionally lied in *voir dire* about her criminal history violated Allen's right to a fair trial and a meaningful *voir dire*;

2.      Statements taken from him during custodial interrogation failed to comply with *Miranda*;

3.      The trial court's refusal to instruct the jury on theft as a lesser-included offense of robbery violated Allen's rights because if found guilty of the lesser-included offense, Allen would not have been eligible for a death sentence;

4.      Allen's right to a fair trial was violated when the State allowed witnesses to testify falsely and the State relied on that evidence in its closing argument;

5.      The Indiana Supreme Court violated Allen's rights by failing to grant a new penalty hearing before the jury, and a sentencing hearing before the trial court;

6.      Allen was deprived of his due process rights because the trial court, when entering a new sentencing order, failed to consider Allen's traumatic childhood and that he adjusted well in institutional settings such as prison;

7.      Allen was deprived of effective assistance of trial counsel at the guilt and penalty phases, as well as during the sentencing hearing;

8.      Allen cannot be executed because he is mentally retarded;

9.      The trial court's penalty phase jury instructions failed to provide the jury with adequate guidance as to their recommendation; and

6

10.     Allen was denied a fair trial, at both the guilt and penalty phases, due to the cumulative errors of trial counsel's ineffectiveness, prosecutorial misconduct, and improper state court rulings.

**IV.**

**A.**

Allen contends that a juror who intentionally lied in *voir dire* about her criminal history violated Allen's right to a fair trial and a meaningful *voir dire*.

The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to a trial by an impartial jury. *Turner v. Murray*, 476 U.S. 28, 36 n.9 (1986). The failure to accord an accused a fair hearing violates even the minimal standards of due process. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (internal quotation marks omitted). A principal mechanism used to safeguard this right is the *voir dire* of prospective jurors. Indeed, *voir dire* "plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion). Thus, a defendant's right to an impartial jury includes the right to an adequate *voir dire* to identify unqualified jurors. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) ("[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors."). *Voir dire* examination is a principal means of enabling the court to ensure that an impartial jury decides the case. *See Mu'Min v. Virginia,* 500 U.S. 415, 431 (1991) ("*Voir dire*

7

examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges").

In a preliminary jury questionnaire, Ms. Geraldine Horsley denied having ever been accused of a crime and indicated in a later more thorough questionnaire that she had never appeared in court for any reason (besides traffic court). Horsley had been arrested following a fight and then charged and sentenced for public intoxication. Thereafter, she was arrested for driving under the influence of alcohol. Under these facts, Allen claims that his trial counsel was denied a meaningful opportunity to *voir dire* Horsley in violation of the Sixth, Eighth and Fourteenth Amendments.

The Supreme Court has set out a two-prong test for determining whether incorrect information supplied by a juror during *voir dire* requires a new trial:

> [T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question . . . and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

The proper test to be applied here, however, is not whether Allen lost a chance at a peremptory challenge, but rather, whether he was tried by an impartial jury. *See Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *see also United States v. Martinez-Salazar*, 528

8

U.S. 304, 307 (2000) (peremptory challenges are "one means to achieve the constitutionally required end of an impartial jury").

The test applied by the Indiana Supreme Court was this:

> [j]uror misconduct will warrant a new trial only when the misconduct is both "gross" and "harmed the defendant." *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind. 1988). *See also Hoskins v. State*, 737 N.E.2d 383, 385 (Ind. 2000) ("To warrant a new trial upon a claim of juror misconduct, the defendant must show that the misconduct was gross and probably harmed the defendant.").

*Allen II*, 749 N.E.2d at 1164.

The trial court concluded that Allen suffered no prejudice by Ms. Horsley's untruthful answers to questions about her prior convictions. The Indiana Supreme Court found that the trial court's conclusion was supported by its findings:

> Allen's trial counsel testified that the juror's previous arrests alone would not have led him to seek her dismissal from the panel. He testified that he would have asked follow-up questions in order to determine whether the juror had a problem with alcohol that would prevent her from functioning as a juror. However, the post-conviction court could conclude that even these follow-up questions would not have led counsel to attempt to exclude the juror. The four offenses were scattered over 27 years. The post-conviction court could properly conclude that these arrests were too infrequent to suggest the type of "pattern" of alcohol-related misconduct that would have led trial counsel to seek the juror's exclusion. It is also plausible that the post-conviction court inferred that because the juror herself had been a defendant in a criminal proceeding, she might have had more empathy for Allen than would a potential juror who had never been arrested or tried. That is, the post-conviction court could infer from the record she was the type of juror that *the State*--and not Allen--would strike from the jury panel.

*Allen II*, 749 N.E.2d at 1165-66 (emphasis in original) (omitting footnotes).

9

Though phrased differently than in *McDonough Power Equipment,* the standard applied in *Allen II* is still an adjudication on the merits, is at least as demanding as the federal standard, and hence is entitled to § 2254(d) deference. *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004) ("So long as the standard it applied was as demanding as the federal standard . . . the federal claim is deemed adjudicated on the merits and its rejection therefore entitled in this habeas corpus proceeding to the deference prescribed by section 2254(d)(1)").

In presenting the question whether Allen had been prejudiced by Horsley's untruthful answers to questions about her prior convictions, the Indiana Supreme Court did not apply a test contrary to the Supreme Court's test in *McDonough Power Equip.* Similarly, in concluding that the Allen had not suffered prejudice as a result of Horsley's untruthful answers to questions about her prior arrests and conviction, the Indiana Supreme Court's decision did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court in *McDonough Power Equip.* Allen's claim to the contrary therefore fails.

**B.**

Allen claims that statements made by him during custodial interrogation failed to comply with his *Miranda* rights.  Allen challenges the Indiana Supreme Court's finding that the *Miranda* rights were adequately supplied, and not nullified by Detective Logsdon's subsequent statements.  Allen also challenges the Indiana Supreme Court's

10

finding that he knowingly and intelligently waived his rights, thus making his confession

voluntary.  Allen also contends that he invoked his constitutional right to remain silent

and right to counsel.

In *Miranda v. Arizona,* 384 U.S. 436, 467 (1966), the Supreme Court stated that

custodial interrogations are inherently coercive.

> "*Miranda* thus declared that an accused has a Fifth and Fourteenth
> Amendment right to have counsel present during custodial interrogation."
> *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S. Ct. 1880, 68 L.Ed.2d 378
> (1981). A defendant may waive effectuation of the rights articulated in
> *Miranda* "provided the waiver is made voluntarily, knowingly, and
> intelligently." *Miranda,* 384 U.S. at 444, 86 S. Ct. 1602. "When a *Miranda*
> waiver is challenged, two distinct questions are presented: whether the
> waiver was voluntary, knowing, and intelligent as a matter of fact, and
> whether it was involuntary as a matter of law." *Henderson v. DeTella,* 97
> F.3d 942, 946 (7th Cir. 1996) (citations omitted).

*Jackson v. Frank*, 348 F.3d 658, 662-63 (7th Cir. 2003) (footnote omitted). A waiver is

voluntary in the absence of coercion, and is knowing if made "'with a full awareness of

both the nature of the right being abandoned and the consequences of the decision to

abandon it.'" *United States v. Krilich*, 159 F.3d 1020, 1025-26 (7th Cir. 1998) (quoting

*Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

A confession is involuntary only if there is (1) police coercion or overreaching

which (2) overbore the accused's will and (3) caused the confession. *See Colorado v.

Connelly*, 479 U.S. 157, 165-66 (1986). "[C]oercive police activity is a necessary

predicate to the finding that a confession is not 'voluntary' within the meaning of the Due

Process Clause of the Fourteenth Amendment." *Id.* at 167. A confession is voluntary "if

11

the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will." *Watson v. DeTella,* 122 F.3d 450, 453 (7th Cir. 1997) (citations omitted). In determining whether a statement is voluntary, the court looks at the surrounding circumstances and the combined effect of the entire course of the officer's conduct upon the defendant. *See United States v. Polanco*, 93 F.3d 555, 560 (9th Cir. 1996). In applying the totality of the circumstances test, the factors that a court should consider to determine whether an accused's confession is voluntary are the following: (1) characteristics of the accused—the defendant's age, education, intelligence level, and mental state; (2) conditions of the interrogation—the length of the defendant's detention,  the nature of the interrogations, and the inclusion of advice about constitutional rights; and (3) the conduct of law enforcement officials—focusing on the use of physical punishment, including deprivation of food or sleep. *See United States v. Brooks,* 125 F.3d 484, 492 (7th Cir. 1997).

The facts relating to the *Miranda* warnings as set forth by the Indiana Supreme Court are as follows:

> The record shows that Allen was first questioned by police officers at 2:45 p.m. and taken to the police station fifteen minutes later, where he remained until he was placed under arrest at 8:45 p.m.  At that time, Detective Crooke told Allen that a note containing his name and telephone number was found in Griffin's home and that Allen was now accused of her murder. Detective Crooke then read Allen the *Miranda* warnings, gave him a preprinted waiver form, asked Allen if he understood his rights, and asked him to sign the form if he was willing to waive his rights. Allen signed the waiver form, and interrogation commenced anew.

12

During this interrogation, Detective Crooke told Allen that he "didn't feel that he was being truthful."  (R. at 2251.)  At some point, Allen suggested he take a lie detector test. A polygraph specialist, Detective Logsdon, was called while Allen ate dinner. At about 11 p.m. the polygraph interrogation commenced. It was transmitted into an adjacent room for Detective Crooke to observe, and it was recorded on tape.

Logsdon loosely reviewed *Miranda* warnings with Allen.  He embellished this explanation of Allen's rights by defaming half of practicing lawyers and suggesting that remaining silent might hurt him. Logsdon gave Allen a second *Miranda* waiver form, which he signed, but Allen's claim rests on Logsdon's remarks at this juncture.

*Allen I*, 686 N.E.2d at 770-71 (footnotes omitted).

The Indiana Supreme Court acknowledged that Detective Logsdon's explanation to Allen of his *Miranda* rights was "deplorable" but stated that:

If it had been the only warning to Allen, relief under *Miranda* would likely be appropriate. We are not persuaded that earlier, proper warnings were rendered inadequate by Logsdon's performance. Allen does not contest that he was properly advised of his *Miranda* rights at 8:45, the moment he was first accused. Allen, a seasoned criminal, told the officer that he understood his rights when so advised and, without threats, promises, or force, signed his name to the waiver form. Just two hours later, he signed an identical waiver form after again being orally advised and instructed to read the form. Despite Allen's protestations to the contrary, the record reveals that Logsdon instructed Allen that the polygraph interview was voluntary, that he could refuse to answer questions, and that he could stop the interview at any time. As a consequence, and in spite of its defects, Logsdon's oral advisement does not nullify the prior, proper advisement Allen received. The warnings were close in time, and Allen had already confirmed that he understood his rights. Logsdon's improper remarks may have affected Allen's subsequent decision to waive his rights--a question of voluntariness--but those remarks did not annul the proper written and oral warnings Allen received.

*Allen I*, 686 N.E.2d at 772.

13

Allen's second Miranda contention is that he did not knowingly and intelligently waive his rights. However, the Indiana Supreme Court found that:

> Allen first signed a waiver form and answered detectives' questions just before 9 p.m. Shortly thereafter, Allen suggested he be interrogated while monitored by polygraph. Allen does not claim he was tricked or otherwise coerced into answering questions during this period.

*Id.* The Indiana Supreme Court went on to explain:

> Allen . . . voluntarily waived his rights subsequent to a proper advisement just two hours before.  That first waiver was close in time and a significant link in the chain of events leading to the challenged waiver. He signed a waiver form a second time, and he was told he did not have to do anything. These circumstances, taken together, negate the claim that Allen was tricked into relinquishing his rights, even if Logsdon's remarks may have influenced Allen not to reclaim his rights.
>
> Allen also claims his waiver was involuntary because he did not affirm his understanding of his rights. We are not persuaded. After all, he signed the waiver document after Detective Logsdon instructed him to read it. *Miranda* does not require an officer to provide the accused with "the quantum of knowledge which an attorney would require before rendering legal advice." *Armour v. State,* 479 N.E.2d 1294, 1298-99 (Ind. 985). It is enough that Allen verbally confirmed his understanding of his rights. That he twice signed a document clearly spelling out his rights and specifically stating that he understood the same is also evidence that he waived them voluntarily. Just as a signed waiver document is not conclusive proof that the waiver was given knowingly and intelligently, freely and voluntarily, the defendant's signature cannot be dismissed simply because he disavows it after he is convicted.

*Allen I*, 686 N.E.2d at 772-73.

Allen also contends that he invoked his constitutional right to remain silent and right to counsel.

Allen's exclamation, "hold it," was simply not an invocation of the right to remain silent. In context, it is readily apparent that Allen's exclamation was nothing more than an instantaneous reaction to learning that the polygraph indicated a lack of truthfulness when he was questioned about the murder weapon.  (R. at 334-38.)  Allen did not communicate by words or conduct a desire to cease answering questions.  We conclude that Allen did not invoke his right to cut off questioning.

... Examination of Logsdon's dialogue with Allen shows that Allen was aware of his right to an attorney but showed no interest in speaking to one. It is readily apparent that Logsdon wanted Allen not to change his mind about doing the polygraph interrogation, but Logsdon did in fact talk to him about lawyers and the appointment of an attorney in addition to making the "pretty much anybody" remark. Allen responded each time. Logsdon then presented Allen with a *Miranda* waiver form, suggested he read it, told him "[t]hat don't mean you have [to] do anything," and referred to the advisement of rights.  (R. at 308.) Allen signed it. He never demonstrated confusion about the meaning of "counsel" and did not show interest in the advice of counsel.

Some fifteen to thirty minutes later, Allen first requested to speak to his mother.  He said he had wanted to talk to her since early in the evening to "let her know what's happenin[g]."  (R. at 323.) Logsdon responded that he would ask other officers to contact her and then he left the room. When he returned, he told Allen he had spoken with an officer who had gone to his mother's home and talked to her. Allen would not mention his mother again for half an hour. On the basis of this exchange, we conclude that Allen did not clearly assert his right to counsel when he asked to speak with his mother.

We reach the same conclusion with respect to Allen's second and third requests to speak to his mother. No reason exists for this Court to find that Allen was actually invoking his constitutional rights because there is no evidence of him conceptually linking "mother" with counsel, attorney, lawyer, or rights. Allen asked to speak to his mother only when his story began collapsing under the weight of negative polygraph results....

Allen talked for nearly six hours, including four after his second warning. The police asked him to give a written statement, but he declined.  His rights were respected, and no misuse was made of this fact. The next afternoon he was advised of his rights again and gave a voluntary statement. He simply was not silent. Without the defendant's silence being used to suggest that he "silently confessed," there is no *Doyle* violation.

*Allen I*, 686 N.E.2d at 774.

Allen's *Miranda* waiver was voluntary in the sense that it was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it—as well as the right to terminate the interrogation at any point until an attorney was present to consult. *Jackson v. Frank*, 348 F.3d at 663 n.5 ("'[t]he state court's historical findings as to the petitioner's knowledge, understanding, and determination . . . are . . . entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) . . . .'") (quoting *Henderson,* 97 F.3d at 946); *see also Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000) (on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence); *Everett v. Barnett*, 162 F.3d 498, 500 (7th Cir. 1998) (explaining that whether a habeas petitioner's *Miranda* waiver was voluntary is a question of law to which the § 2254(d) standard of review applies, although the underlying historical facts are afforded the presumption of correctness under § 2254(e)(1)). Allen has not shown by clear and convincing evidence, as required by 28 U.S.C. § 2254(e)(1), that this factual finding is based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d)(2). On a similar note, Allen has failed to present the district court with clear and convincing evidence relevant to the interrogation which would suggest that the Indiana Supreme Court was well outside the realm of permissible legal conclusions when it determined that Allen's *Miranda* rights were not nullified by Detective Logdson's subsequent statements and that Allen did not invoke his right to remain silent and right to counsel. There is no basis under the AEDPA to support Allen's habeas petition as to his *Miranda* claims.

16

**C.**

Allen's counsel requested the trial court instruct the jury on theft as a lesser-included offense of robbery.  However, the trial court refused to do so and instructed the jury solely on murder during the course of a robbery.  Allen claims that had he been found guilty of the lesser-included offense of theft, Allen would not have been eligible for a death sentence.

In general, the failure of a state trial court to instruct the jury on a lesser offense does not implicate a federal constitutional question and will not be considered in a federal habeas corpus proceeding. *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 404 (7th Cir. 1979) (citations omitted); *see also United States ex rel. Waters v. Bensinger*, 507 F.2d 103, 105 (7th Cir. 1974) ("[I]nstructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues."). In a habeas action, the question is not whether the failure to instruct on a lesser included offense was correct or incorrect under state law, but rather whether failure to do so constituted a defect so fundamental that it results in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure. *Peery*, 615 F.2d at 404; *Nichols v. Gagnon*, 710 F.2d 1267, 1269 (7th Cir. 1983).

Under Indiana law, "once the trial court has determined that a lesser offense is included either inherently or factually, the court must look at the evidence presented by both parties to decide whether 'there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense' such that a jury could

17

conclude that the lesser included offense was committed but not the greater." *Allen I*, 686 N.E.2d at 776 (quoting *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995)). This latter element was entirely absent here.

> Theft is a lesser included offense of robbery, *Landers v. State*, 464 N.E.2d 912 (Ind.1984), but there is no evidence of simple theft in the record.   In fact, the evidence points the other way. The crime scene is a picture of violence. The victim lies with a knife in her chest. A bloody and broken toaster lies near her head. There is damage to a closet door, a kitchen counter, and so on. A camera box sits without the camera. All in all, plenty of force and evidence of missing property.
>
> Against this evidence, Allen's counsel suggests, for instance, that perhaps the victim had given Allen the camera, or that he may have gained it on some other day. This speculation does not create a "serious evidentiary dispute." The trial court correctly refused to instruct on theft.

*Allen I*, 686 N.E.2d  at 777.

The Indiana Supreme Court's decision was not contrary to the Supreme Court's test, nor was it an unreasonable application of such test, that a lesser-included offense instruction is not required unless "'the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater,'" *Hopper v. Evans*, 456 U.S. 605, 612 (1982) (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)). Accordingly, Allen's claim on this issue must fail.

**D.**

Allen claims that his right to a fair trial was violated when the State allowed various witnesses to testify falsely and then relied on that evidence in its closing argument. Specifically, the prosecutor knew Detective Logsdon had informed Allen of

the facts surrounding the crime and the self-defense claim, yet the prosecutor created a false impression in the minds of the jurors that Allen alone created the self-defense story and that Allen confessed facts that only the killer would have known.

Deliberate deception of a judge and jury is "inconsistent with the rudimentary demands of justice." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). Thus, "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* Further, as the *Napue* Court explained, this principle "does not cease to apply merely because the false testimony goes only to the credibility of the witness" because "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Id.*

The Indiana Supreme Court found no prosecutorial misconduct associated with Allen's claim. *Allen I*, 686 N.E.2d at 775. The Indiana Supreme Court determined that Allen provided no evidence which showed the challenged testimony was false and therefore, the claim lacked substance. Furthermore, "[t]he challenged portion of the prosecutor's summation refers to conversations police officers had with Allen *before* his interrogation by Detective Logsdon. Accordingly, the prosecutor's closing argument was based on legitimate evidence." *Id.*(emphasis in original). The Indiana Supreme Court's decision constitutes a correct application of *Napue*.

19

**E.**

Allen contends that the Indiana Supreme Court violated Allen's rights by failing to grant a new penalty hearing before the jury, and a sentencing hearing before the trial court. Due to these actions, Allen argues his constitutional rights were violated by the failure to hold new hearings which:

1.      Denied Allen the right to an adversarial proceeding;

2.      Denied Allen the opportunity to present live testimony or be heard by the trial court; and

3.      Prejudiced Allen by not allowing him the opportunity for a new penalty hearing before a jury and instead relied upon the former jury's death recommendation which was made without the benefit of the mitigating circumstances which the Indiana Supreme Court ordered be considered.

The Indiana Supreme Court addressed Allen's claim as follows:

Our remand order specifically directed the trial court to take three actions that operated to Allen's benefit when issuing the written sentencing order. The first was our command that the trial court follow current capital sentencing standards, which are stricter and narrower than those of 1988. The second was our directive that the court consider evidence favorable to the defendant that was outside the trial record.   Finally, we granted the full scope of Trial Rule 59 powers to the court, explicitly empowering it to grant relief such as that contemplated in subsection (J). Essentially, the trial court was invited to reconsider its sentencing determination in light of new evidence and a more limited weighing standard, with more specific requirements for explaining its determination of the balance.  We consider this a fair process, one which advanced Allen's interests.

> We ordered these safeguards to assure that impermissible non-statutory aggravators are not factors weighing in the capital sentencing balance. The trial court performed its duty under the remand order in a straightforward way. Allen suggests nothing demonstrating otherwise.

*Allen I*, 686 N.E.2d at 789 (footnote omitted).  Allen's arguments fail for three reasons:

*First*, in *Brown v. Sanders*, 126 S. Ct. 884 (2006), the Supreme Court held that although two of the four eligibility factors found by the jury were invalidated, because any of the factors would have made the defendant death penalty eligible, there was no constitutional violation in sentencing the defendant to death. The Court explained:

> [T]he jury's consideration of the invalid eligibility factors in the weighing process did not produce constitutional error because all of the facts and circumstances admissible to establish the ...eligibility factors were also properly adduced as aggravating facts bearing upon the "circumstances of the crime" sentencing factor.  They were properly considered whether  or not they bore upon the invalidated eligibility factors.

*Id.* at 894.  Here, because the charged aggravator of intentionally killing the victim while committing a robbery satisfies this requirement, there was no constitutional violation in sentencing Allen to death. Allen's claim that the trial court erred by considering non-statutory aggravating factors must fail under *Sanders*.

*Second*, it is clear that the Indiana Supreme Court interprets its authority under Article VII, Section 4, of the Indiana Constitution to "review and revise" sentences in the manner undertaken in Allen's case. *See Bellmore v. State*, 602 N.E.2d 111, 130 (Ind. 1992) ("This Court has long recognized and exercised its authority under our state

21

constitution and statutes to conduct an independent reweighing of aggravating and mitigating factors in determining the appropriateness of a death penalty."). On July 3, 1996, the Indiana Supreme Court remanded Allen's case to the trial court to produce a written sentencing order consistent with *Bellmore*. The Indiana Supreme Court explained:

> we ordered the trial court to produce a new sentencing order that complied with the procedures explained in *Roark v. State*, 644 N.E.2d 565 (Ind.1994), and the precedents established in *Bellmore* and *Bivins.* Furthermore, we noted that Allen submitted affidavits with a belated motion to correct errors, which had been denied, and directed the trial court to consider the sworn statements under a Trial Rule 59 standard when issuing the sentencing order. Without vacating the sentence, we effectively instructed the trial court to reconsider Allen's sentence under narrower, stricter standards mandated by our later interpretations of the law.

*Allen I*, 686 N.E.2d at 787-88 (footnote omitted).

   *Third*, there is no question but that state capital sentencing procedures must satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.  In a "weighing state" the jury's consideration of an unconstitutionally vague factor at the final stage of death penalty proceedings violates the defendant's constitutional rights under the Fourteenth Amendment and requires that a resulting death sentence be vacated, unless a state appellate court has cured the defect by reweighing the valid factors or conducting a harmless error analysis. *Richmond v. Lewis*, 506 U.S. 40, 46-47 (1992) (citing *Clemons*, 494 U.S. at 748-52). Allen's reliance on *Hicks v. Oklahoma*, 447 U.S. 343 (1980), is misplaced, for *Hicks* stands solely for the principle that due process is

violated when a state appellate court admits it is without authority to cure a void sentence, but affirms such sentence nonetheless.  No such admission was made by the Indiana Supreme Court, which went to some length to explain just the opposite.

This undertaking was not contrary to the standard established by the United States Supreme Court, nor an unreasonable application of that standard.

**F.**

Allen claims that the trial court, when entering a new sentencing order, failed to consider Allen's traumatic childhood and that he adjusted well in institutional settings such as prison, despite the fact at both the original sentencing hearing and in the belated motion to correct errors mitigating factors besides mental retardation were presented.

It has been clearly established by the Supreme Court that the death penalty must be warranted by the unique aggravating and mitigating circumstances surrounding an individual defendant. *See Gregg v. Georgia*, 428 U.S. 153, 198 (1976). In *Eddings v. Oklahoma*, 455 U.S. 104 (1982), the Supreme Court applied the rule it had announced in *Lockett v. Ohio*, 438 U.S. 586 (1978), and held that a sentencer may not "refuse to consider, as a matter of law, any relevant mitigating evidence" when contemplating a sentence of death. *Eddings*, 455 U.S. at 114. *See also Boyde v. California*, 494 U.S. 370, 377-78 (1990) (Eighth Amendment requires capital sentencers to consider "all relevant mitigating evidence" offered by defendant). This requirement exists because an individualized sentencing determination is required in death penalty cases pursuant to

23

the Eighth and Fourteenth Amendments. *Clemons v. Mississippi*, 494 U.S. 738, 748 (1980).

A mitigating factor under the Constitution is "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). As Justice O'Connor has stated, "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring).

The Indiana Supreme Court considered this issue on Allen's direct appeal:

Allen complains that there is a "deafening silence" from the trial court with respect to its finding that the charged aggravating factor outweighs "the possibility of the mitigating circumstance of mental retardation." This is not true. Judge Barney devoted more than fifty percent of his written order to determining the weight to ascribe to the mental retardation evidence averred. He accomplished this by comparing it to evidence already contained in the record: that Allen's criminal history showed him to be a "solo-acting criminal;" that earlier presentence reports showed Allen with an I.Q. of 104; that in open court his own counsel withdrew a prior motion for psychiatric evaluation; that none of his family members who testified on his behalf described him as anything other than of normal intelligence; that none of the eighteen people who submitted letters on Allen's behalf to the court hinted that he was not of normal intelligence; and that the judge's own observation of the defendant showed that he understood the proceedings. Accepting the facts alleged about Allen's childhood does not compel a finding of mitigating circumstances. *Lowery v. State,* 547 N.E.2d 1046 (Ind.1989), *cert. denied* 498 U.S. 881, 111 S.Ct. 217, 112 L.Ed.2d 176 (1990). Comparison is what a person does when balancing, and the trial judge indeed weighed the evidence when deciding to impose a sentence of death.

Moreover, the trial court certified on remand that it considered only one aggravating factor: the defendant's act of intentionally killing the victim while committing a robbery. It then considered statutory mitigating factors and the defendant's affidavits tending to describe him as retarded. The trial judge found the evidence relevant to mitigating factors to be of little weight. Accordingly, he found the charged aggravator outweighed the mitigating factors, considered the jury recommendation that the defendant should be sentenced to death, and pronounced a sentence of death. This is what the death penalty statute requires. Ind.Code Ann. § 35-50-2-9 (West Supp.1996); *Roark v. State,* 644 N.E.2d 565 (Ind.1994).

Allen's claims that the sentencing statement fails to indicate that the death sentence was the personal conclusion of the judge and that the court did not conduct discrete and individualized consideration of Allen's character are meritless. The written order refers to information contained in pre-sentence reports and personal letters that only the trial judge would have seen, not the jury, and the order specifically refers to "the Court's own observation of the Defendant." (Supp. R. at 81.) The court's balancing of the evidence emphatically displays its discrete, individualized sentencing.

*Allen I*, 686 N.E.2d at 789-90 (footnotes omitted).

After having considered the record on this claim, it is evident that Judge Barney, just as did the judge in *Benefiel*, "was aware . . . what mitigation was all about.  It was simply that in his view those factors did not tip the scales when they were weighed against the aggravating factors." *Benefiel*, 357 F.3d 655, 663 (7th Cir. 2004). Accordingly, there is no merit to this claim.

## G.

Allen presents two specifications of ineffective assistance of counsel.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. For a petitioner to establish that his "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id.* at 687. The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688). In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689;

26

*Holman v. Gilmore*, 126 F.3d 876, 881-82 (7th Cir. 1997). The prejudice prong of the
*Strickland* test requires showing "that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different."
*Strickland,* 466 U.S. at 694; *see also Bell v. Cone*, 535 U.S. 685, 697-98 (2002). It is not
enough for a petitioner to show that "the errors had some conceivable effect on the
outcome of the proceeding." *Strickland*, 466 U.S. at 693. A petitioner must specifically
explain how the outcome at trial would have been different absent counsel's ineffective
assistance. *Berkey v. United States*, 318 F.3d 768, 773 (7th Cir. 2003).

"In a capital case, the two-prong *Strickland* analysis is applied at both the guilt
and penalty phase." *Fugate v. Dep't of Corrs.*, 261 F.3d 1206, 1216 (11th Cir. 2002)
(citing *Mincey v. Head*, 206 F.3d 1106, 1142 (11th Cir. 2000)). "Capital jurisprudence
has long recognized that counsel's ability to advocate effectively during the sentencing
phase is derived from adequate preparation directed specifically to the penalty phase."
*Marshall v. Hendricks*, 307 F.3d 36, 99 (3d Cir. 2002). In the context of a capital
sentencing proceeding, the relevant inquiry is "whether there is a reasonable probability
that, absent the errors, the sentencer . . . would have concluded that the balance of
aggravating and mitigating circumstances did not warrant death. In making this
determination, a court hearing an ineffectiveness claim must consider the totality of the
evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

To evaluate the performance of counsel for Sixth Amendment purposes, the
relevant perspective is the time of trial, not afterwards when everyone knows that
counsel did not succeed in avoiding the death penalty. *See Kokoraleis v. Gilmore*, 131

27

F.3d 692, 696 (7th Cir. 1997) ("A trial may be adversarial and fair even if the chosen strategy goes awry. Because counsel cannot experiment with different strategies, it is difficult in both principle and practice to know how best to proceed.").

The *Strickland* standard has been recently applied by the United States Supreme Court in *Wiggins v. Smith*, 539 U.S. 510 (2003), in which the Court stressed that its endeavor was to "conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' *Strickland*, 466 U.S. at 688, which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Id.* at 689. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

There was no portion of the decisions of the Indiana Supreme Court in Allen's case which "appl[ied] a rule that contradicts the governing law . . . [or made] a decision that involve[d] a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Williams*, 529 U.S. at 405-06. Accordingly, this court finds that (1) the AEDPA does apply to each of the specifications of deficient performance by Allen's counsel challenged in this case, and (2) the "contrary to" prong of § 2254(d)(1), is not implicated by the circumstances of this case with respect to any of Allen's claims. Similarly, findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000) (applying 28 U.S.C. § 2254(e)(1)). Allen has not shown by clear and convincing evidence, nor by any evidence at all, that the various recitations of evidence

or factual findings by the Indiana state courts are not correct. Those findings of fact are therefore accepted for the purpose of this proceeding, and no relief or re-determination of the facts is available to Allen under § 2254(d)(2) with respect to any of the claims in this case.

Allen's specifications of ineffective assistance are that his counsel: (1) failed to investigate and present mitigation evidence, and (2) failed to present evidence that Allen would not be violent in a correctional institution, and that both of these specifications of ineffectiveness would have provided a logical basis to defeat the death penalty.

(1)     Failure to investigate and present mitigation evidence

Allen argues that trial counsel was ineffective in failing to both investigate and present mitigation evidence.  Specifically, he claims that counsel failed to investigate and present mitigation evidence such as traumatic childhood, physical and emotional abuse, a complete psycho-social assessment, evidence of mental retardation and a neuro-psychological assessment.

In evaluating a claim of ineffective assistance of counsel, a court should:

> evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The

Indiana Supreme Court's assessment of these circumstances was not an unreasonable

application of established federal law and is entitled to § 2254(d)(1) deference.

*Matheney v. Anderson*, 377 F.3d 740 (7th Cir. 2004) (citing *United States ex rel. Bell v.*

*Pierson*, 267 F.3d 544, 557 (7th Cir. 2001) (noting that the AEDPA provides for clear

error review of state court *Strickland* adjudications because of the inherent "element of

deference to counsel's choices in conducting the litigation" in combination with the "layer

of respect" added by § 2254(d)(1))).

The Indiana Supreme Court reviewed Allen's claim that trial counsel was

deficient for failing to present mitigation evidence regarding his traumatic childhood and

concluded that:

> While the evidence of Allen's family history describes the difficult
> conditions of his childhood, it also contains numerous positive references
> to Allen's role as a protector of the younger children in his neighborhood
> and family, his role as "man of the house," his tendency to take blame for
> others, and his practice of stealing to feed his family.  This
> testimony--which was intertwined with the negative aspects of Allen's
> youth--is a form of character evidence that could open the door to Allen's
> criminal history. Trial counsel's performance was not deficient for not
> presenting this evidence.

*Allen II*, 749 N.E.2d at 1173.

The Indiana Supreme Court also concluded in relation to Allen's experience at

the Indiana Boy's School, "[h]ad Allen placed his experiences at IBS into evidence, he

could have placed his entire criminal history at issue," *and* that in relation to the

conclusions that could have been disclosed by Marjorie Hammock in relation to a

psycho-social assessment, "counsel acted reasonably in withholding such details of Allen's family history for fear that the jury would learn about Allen's criminal history." *Allen II*, 749 N.E.2d at 1174. Finally, the Indiana Supreme Court addressed Allen's claim regarding mental retardation and the neuro-psychological assessment and found that although the post-conviction court was incorrect in concluding that this information would open the door to Allen's criminal history, "Allen is not entitled to relief because he has not demonstrated that counsel's failure to present evidence  of these mental conditions was constitutional error." *Allen II*, 749 N.E.2d at 1175.

As for Allen's claim that his counsel failed to properly investigate in building a mitigation case on his behalf, the Indiana Supreme Court found that Allen's case is distinguishable from *Williams v. Taylor*, 529 U.S. 362 (2000), because:

> the record shows that counsel had a working knowledge of some of the mitigation evidence that Allen asserts on post-conviction review but made a strategic decision not to present it . . . . In light of the adverse effect that evidence of similar crimes against similar victims could have on a jury, counsel acted reasonably in striking a cautious balance towards Allen's criminal history.

*Allen II*, 749 N.E.2d at 1176.

As the Supreme Court has instructed: "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). "There are countless ways to provide effective assistance in any given case." *Strickland*,

466 U.S. at 689; *see also Nix v. Whiteside*, 475 U.S. 157, 165 (1986). The court is mindful that it is "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Thus, "in considering claims of ineffective assistance of counsel, we address not what is prudent or [even] appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quotation omitted). The performance prong of *Strickland* is examined "in the context of the case as a whole, viewed at the time of the conduct, and [with] a strong presumption that the defendant received effective assistance." *Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003). In this case, Allen failed to establish that "in light of all the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  The Indiana Supreme Court's decision on this point was not an "unreasonable application of," clearly established federal law, and thus is impervious to federal habeas corpus relief.  This court has also concluded, independent of the deference commanded by the AEDPA to the Indiana Supreme Court's finding of no inadequate performance, that Allen was not prejudiced by the representation he received at trial. His claim to the contrary therefore fails.

(2)     Failure to present evidence that Allen would not be violent in a correctional

institution

Allen claims that his trial counsel was ineffective for failing to present evidence

that Allen would not be violent in a correctional institution. The Indiana Supreme Court

reviewed the forensic psychologist, Dr. Mark Cunningham's testimony as follows:

> He testified that if he had been called at Allen's trial, he would have relied
> in part on Allen's previous behavior while incarcerated. Therefore, any
> testimony regarding Allen's dangerousness in prison would have exposed
> his convictions to the jury and the post-conviction court was correct to
> conclude that counsel made a reasonable strategic decision in regards to
> this testimony.

*Allen II*, 749 N.E.2d at 1175.

Once again, trial counsel ensured that Allen's criminal history was not revealed to

the jury, including a conviction for the voluntary manslaughter of another elderly woman

during a burglary, other felony convictions and a juvenile record. Allen has failed to

establish that "in light of all the circumstances, [counsel's] identified acts or omissions

were outside the wide range of professionally competent assistance." *Strickland*, 466

U.S. at 690.  Even if Allen could demonstrate that his counsel performed deficiently,

Allen's claim fails the second part of the *Strickland* test because he cannot demonstrate

that his counsel's decision not to use mitigation evidence that would unlock the door to

his criminal history prejudiced him.

Allen's specification of ineffective assistance of counsel fails to support either

prong of *Strickland.* The Indiana Supreme Court's specific discussion and resolution of

33

the contention does not run afoul of either prong of § 2254(d)(1) or of § 2254(d)(2).  *See*

*Balfour v. Haws*, 892 F.2d 556, 562-63 (7th Cir. 1989) (noting that for specific allegations

of ineffective assistance courts must "weigh the overall quality of representation provided

to the defendant" and not individual shortcomings).  It has been noted that "only a clear

error in applying *Strickland's* standard would support a writ of habeas corpus," *Holman*,

126 F.3d at 882.  While such errors do occur, *e.g.*, *Brown v. Sternes*, 304 F.3d 677 (7th

Cir. 2002); *Roche v. Davis*, 291 F.3d 473, 483-84 (7th Cir. 2002), no such error occurred

in the representation Allen received in the trial court.  Accordingly, he is not entitled to

relief.

## H.

Allen claims that his execution would be unconstitutional because he is mentally

retarded.  Allen also asserts that the deferential standard of review in the AEDPA is not

applicable to this claim because the state court never adjudged this claim under the

correct or appropriate United States Supreme Court standard.  Allen sought permission

to litigate this claim in a successive petition for post-conviction relief based on *Atkins v.*

*Virginia*, 536 U.S. 304, 321 (2002).  On July 15, 2003, the Indiana Supreme Court denied

Allen's request. The Indiana Supreme Court concluded:

> In the direct appeal, we rejected Allen's argument that the trial court had
> failed to give adequate consideration to the evidence of mental retardation,
> and we deferred to the trial court's judgment about the weight to be given
> the evidence:
>
>> Judge Barney devoted more than half of his four-page order
>> to weighing the evidence averred by Mary Jo Dare and Dr.
>> Richard Dever, experts who submitted affidavits supporting

> Allen's claim of retardation.   He found it controverted by
> other evidence in the record, which reduces the issue to one
> of credibility.   The trial court's judgment about the credibility
> and weight of evidence is part and parcel of its statutory
> balancing function.   This Court will not second-guess the trial
> court on questions of credibility or weighing.

686 N.E.2d at 788-89 (rejecting argument that trial court failed to weigh
aggravators and mitigators properly).  We concluded:

> There is little evidence that Allen is mentally retarded, and
> none that shows him to be incapable of appreciating the
> criminality of his conduct or to conform it to the law. At
> sentencing, Allen's colloquy with the trial judge amply
> demonstrated that he was mentally present and that he
> understood the proceedings.   As a result, the trial court's
> balance of the statutory aggravator against the scant
> evidence in mitigation and the court's due consideration of
> the jury's recommendation are reasonable in fact and
> supportable in law.   We conclude that the aggravating
> circumstance outweighs the mitigating circumstance and that
> the penalty is appropriate to the offense and the offender.

*Id.* at 790-91.


*Allen v. State*, 49S00-0303-SD-122 (Ind. 2003) (unpublished order).


The Supreme Court held in *Atkins v. Virginia* that the Eighth Amendment prohibits

the execution of a mentally retarded person.   Allen asserts that the Indiana Supreme

Court did not properly consider whether Allen was mentally retarded in light of *Atkins*.

However, in denying Allen's request to litigate the *Atkins* claim in a successive petition,

the Indiana Supreme Court stated:


> We acknowledge that the issue of Allen's mental capacity was
> presented to the trial court in the context of whether mental retardation, if
> established, was a mitigating circumstance sufficient to outweigh the death-
> eligible aggravating circumstance of an intentional killing in the course of a
> robbery.  At the time, this balancing process was the procedure for
> factoring a convicted person's mental retardation into the capital

sentencing decision.  *See* I.C. § 35-50-2-9(c) & (e); *Allen*, 686 N.E.2d at 790.

> *Atkins* held that a person shown to be mentally retarded cannot be executed.  That is, when *Atkins* is applied to Indiana's sentencing scheme, the mitigating circumstance of mental retardation necessarily outweighs any death-eligible aggravating circumstance.

> However, the factual inquiry under either analysis *is the same: is the person mentally retarded?* In Allen's case, the trial court's sentencing order acknowledged the existence of some evidence that Allen was mentally retarded, but ultimately found that he was not.  When the trial court's order stated that the evidence tended "to show . . . a very slight mitigating factor," and that other evidence "erodes whatever weight the Court gives to this mitigating circumstance," we conclude the trial court meant that Allen had not proved to the court's satisfaction that Allen was actually mentally retarded.

*Allen v. State*, 49S00-0303-SD-122 (Ind. 2003) (unpublished order).

In presenting the question whether Allen is mentally retarded, the Indiana Supreme Court neither applied a test contrary to the Supreme Court's decision in *Atkins* nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court in *Atkins.*  Allen's claim to the contrary therefore must fail.

## I.

Allen contends that he was denied a fair trial resulting from the penalty phase jury instructions' failure to provide the jury with adequate guidance as to their recommendation. Specifically, Allen claims that the jury instructions: (1) failed to inform the jury that unanimity was required in finding the aggravating circumstance beyond a reasonable doubt; (2) failed to inform the jurors that unanimity was not needed to find the

existence of mitigating factors; (3) instructed the jury on all statutory mitigating factors, thereby focusing the jury on the lack of mitigation presented; and (4) failed to inform the jurors that the burden was on the state to prove the aggravating circumstance outweighed the mitigation beyond a reasonable doubt.

Among other instructions, Judge Barney gave a preliminary instruction that:

The jury may recommended the death penalty only if it finds:

1.   That the State has proved the existence beyond a reasonable doubt
      of the aggravating circumstance alleged in their charging
      information, and,
2.   That any mitigating circumstances that exist are outweighed by the
      aggravating circumstance.

The reasonable doubt standard applied against the State in the sentencing
hearing is the same as that used in the trial stage of these proceedings.

(R. 2795; *see also* R. 2933-2936.) Judge Barney also instructed the jury that the court makes the final determination of Allen's sentence, after considering what the jury recommended, but the court is not bound by the jury's recommendation. (R. 2796.)

Improper jury instructions in state criminal trials rarely justify federal habeas relief. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In examining such a claim, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986), *cert. denied,* 107 S. Ct. 1901 (1987)). This, in turn, requires the petitioner to prove that the erroneous instruction "by itself so infected the entire trial that the resulting

37

conviction violates due process." *Galvan*, 293 F.3d at 764-65 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Moreover, there is a strong presumption that errors in jury instructions are subject to a harmless error analysis. *Id.* at 765. A constitutional error is harmless unless it "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

The Indiana Supreme Court addressed the subject matter of jury instructions within the victim impact section. The Indiana Supreme Court's discussion within the context of the penalty phase instructions explained that the penalty phase: "requires balancing of aggravators and mitigators, and it is undertaken only once the jury has found the charged statutory aggravator proven beyond a reasonable doubt. We are satisfied that the error, if any, was harmless."  *Allen I*, 686 N.E.2d at 787 (citation omitted).

Given the entire picture which emerges on this issue, it cannot be concluded that the Indiana Supreme Court's decision regarding the penalty phase instructions was contrary to or an unreasonable application of clearly established federal law. Accordingly, relief on this claim must be denied.

**J.**

As a separate claim in his petition for a writ of habeas corpus, Allen argues that he was denied a fair trial, at both the guilt and penalty phases, due to the cumulative errors of trial counsel's ineffectiveness, prosecutorial misconduct, and improper state

court rulings, all of which are violations of his constitutional rights. Most of these claims are repetitious of claims raised in other portions of his petition, and have been fully discussed and resolved.  These claims, in the aggregate, do not warrant a different conclusion.  As explained by the Seventh Circuit in *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000), where there is "no error, or just a single error, there are no ill effects to accumulate and so a petitioner in such a case could not prevail on this theory [of cumulative error]." Allen has not demonstrated error of constitutional dimension in his habeas petition, and there is no cumulative effect from the alleged errors raised by him.

The Supreme Court's death penalty jurisprudence includes the recognition that death is different, *Woodson v. North Carolina*, 428 U.S. 280, 303-304 (1976), and that this difference creates a unique "need for reliability on the determination that death is the appropriate punishment in a specific case." *Zant v. Stephens*, 462 U.S. 862, 884-885 (1983) (quoting *Woodson,* 428 U.S. at 303-304). The role of federal habeas review, though limited, must be correspondingly careful, for "Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." *McFarland v. Scott*, 512 U.S. 849, 859 (1994). After having conducted the thorough review required, the court's firm conclusion is that Mr. Allen received all the benefits and protections the Constitution provides.

**V.**

Allen's prosecution, trial, conviction, and sentencing have received exhaustive review, both in this action for habeas corpus relief and in the Indiana state courts. Allen's conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it.  *See Farmer v. Litscher*, 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley*, 506 U.S. 20, 29-30 (1992)); *Milone v. Camp*, 22 F.3d 693, 698 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law. . . .").[2] As the foregoing discussion demonstrates, this court's view is that he received all that the Constitution requires.

> For a trial to be constitutionally sound requires . . . a trial where the prosecutor must prove all elements of a crime beyond a reasonable doubt in order to convict; where the prosecutor adheres to certain rules of conduct that guarantee a fair trial and a proper consideration of the defendant's theories and supporting evidence; where the jurors consider only evidence adduced by the parties and that a defendant has had an opportunity to rebut; and where a defendant enjoys the right to cross-examine adverse witnesses.

*Gall v. Parker*, 231 F.3d 265, 277-78 (6th Cir. 2000).

This court's careful examination of the trial and post-conviction record, undertaken in conjunction with the claims presented by Allen in his habeas petition, leaves no doubt that he received a fair trial, extending through the sentencing proceedings. Allen's

---

[2] Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley*, 506 U.S. at 29 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 468 (1938)).

request for an evidentiary hearing is **denied**. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke*, 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Allen to relief in this case. Allen's petition for a writ of habeas corpus is therefore **denied**. Judgment consistent with this Entry shall now issue.

ALL OF WHICH IS ENTERED this 19th day of September 2006.

John Daniel Tinder, Judge
United States District Court

Copies to:

Stephen R. Creason
Indiana State Attorney General
stephen.creason@atg.in.gov

Alan M. Freedman
Midwest Center for Justice Ltd
fbpc@aol.com

Andrew A. Kobe
Indiana State Attorney General
Andrew.Kobe@atg.in.gov

Laurence E. Komp
lekomp@swbell.net